**FILED**
**Apr 07, 2021**
**09:12 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| **AMANDA MOSLEY,** | ) | **Docket No 2019-04-0064** |
| **Employee,** | ) | |
| **v.** | ) | |
| **HG STAFFING, LLC,** | ) | **State File No. 7907-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **CAROLINA CAS. INS. CO.,** | ) | **Judge Robert Durham** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This case came before the Court on March 29, 2021, for a second Expedited Hearing. Ms. Mosley seeks additional medical and temporary disability benefits for right wrist and hand complaints due to her employment with HG Staffing. HG Staffing asserts that she has not shown that her current symptoms arise primarily out of employment with it, but rather they were caused later employment. Both parties relied on conflicting doctors' opinions. After considering their opinions and Ms. Mosley's testimony, the Court holds that Ms. Mosley is likely to prevail at trial regarding medical benefits but has not shown entitlement to temporary disability benefits.

### History of Claim

Earlier this year, the Court entered an Expedited Hearing Order that held Ms. Mosley was likely to prove she sustained a work-related injury on January 10, 2019, to her right hand and wrist while working for HG Staffing, a temporary employment agency. The Court ordered HG Staffing to pay temporary partial disability benefits from April 8 through June 20, 2019, but it denied Ms. Mosley's request for additional temporary disability benefits and medical treatment with her unauthorized doctor, Roy Terry.[1]

---

[1] For this hearing, the parties stipulated to the Findings of Fact and Conclusions of Law contained in that Order, and they are incorporated by reference.

1

Afterward, Ms. Mosley filed another Petition for Benefit Determination seeking the benefits she did not receive at the first hearing. At the second hearing, she elaborated on her injury.

She testified that she initially injured her right arm on January 1, 2019, in the presence of her supervisor, "J.R."[2] During a conversation with him, she accidentally hit a button on her machine, a drive shaft fell out of it, and it struck her right arm when she attempted to catch it.

Later that day, she told J.R. that her arm hurt. He modified her duties but advised against giving formal notice of an injury because she could lose her job. Ms. Mosley believed she had been "doing great" at work and was on the verge of being offered a full-time position. So she did not report the injury at first. However, Ms. Mosley's symptoms persisted, and a safety coordinator who noticed her wearing a brace insisted she file an accident report, which she did on January 25.

HG Staffing's client, Dana, informed HG staffing on January 28 that it no longer needed Ms. Mosley's services due to "performance." HG Staffing did not provide any evidence regarding her alleged performance deficiency.

After the placement at Dana ended, Ms. Mosley testified that she asked HG Staffing for a new position, but it did not offer one.[3] So, she took employment at a nursing home, despite still suffering from hand pain. She worked there for a few weeks, but the job required significant right-hand use, and the pain forced her to quit. Ms. Mosley hasn't worked since.

Regarding her physical condition, Ms. Mosely testified that she continues to be extremely limited in using her right hand given the pain and weakness she suffers in it. For example, she said that she dropped a bottle of cleaning fluid while attempting to clean her floor and was sprayed in her eye. She does not believe that she can find employment with her current symptoms, but she wishes to return to work.

As for her medical care, the Court outlined the medical proof in the first Expedited Hearing Order. In summary, the authorized physician, James Rubright, believed that Ms. Mosley suffered from De Quervain's tenosynovitis due to her January injury, but that her

---

[2] On cross-examination, Ms. Mosley admitted that in her previous testimony, she stated the injury occurred on January 10 and conceded that it was unlikely she worked on New Year's Day. She said she could not remember the exact day of the injury, but it occurred several weeks before she filed an official report.

[3] At the first hearing, Denise Givens, CEO of HG Staffing, testified that she was unaware of any efforts Ms. Mosley made to reapply with her company, but she stated it would have been able to accommodate any physical restrictions on her work activities.

2

symptoms had resolved before working at the nursing home. He continued that he did not know if he could "clearly assign causation to her previous work," given that her symptoms had "essentially resolved" until she worked for another employer. In response to a "check the box" causation letter, he responded "no" when asked whether he was "able to state to a reasonable degree of medical certainty (more than 50%) that Ms. Mosley's current symptomology is related to her employment at HG Staffing when considering all causes." Based on these statements, HG Staffing denied Ms. Mosley's claim for additional care from Dr. Rubright.

An independent medical evaluator, Dr. David West, agreed that Ms. Mosley probably sustained a work-related injury in January 2019, but he could not explain her current symptoms and did not believe they were "directly related" to her work injury.

On the other hand, Dr. Terry, whom Ms. Mosley first saw on December 19, 2019, after Dr. Rubright released her, stated in his records that he believed that her current symptoms were probably the "same problems" she had when treating with Dr. Rubright and "were related" to her work injury. He noted that she had always given a consistent history, and he had no reason to doubt her. He also checked "yes" when asked whether he agreed "that Amanda Mosley's injury is more likely than not to a reasonable [d]egree of medical certainty an injury that occurred on the job while working for the company HG Staffing and the reason she had to seek medical attention."

After the first hearing, the Court held that none of the medical proof was sufficient to resolve the issue as to whether Ms. Mosley's current symptoms were primarily caused by her January 2019 work injury. Dr. Rubright qualified the opinions in his records, and the "check the box" letter was not an affirmative opinion against causation. Further, neither Dr. Rubright nor Dr. West explained why the fact that Ms. Mosley's symptoms had eased after rest only to return when she worked somewhere else for a few weeks suggested that she suffered a "new injury" at her later employment. As for Dr. Terry's opinions, the Court held that his records and the "check-the-box" letter were not enough to show that Ms. Mosley's symptoms "primarily arose out of" her work injury.

Therefore, given that the burden belonged to Ms. Mosley, the Court denied her request for additional medical care and temporary disability benefits after her initial release from Dr. Rubright's care.

For the second hearing, Ms. Mosley submitted a C-32 Medical Report from Dr. Terry. He stated, within a reasonable degree of medical certainty, that Ms. Mosley suffers from "right wrist DeQuervain's tenosynovitis" that is primarily due to dropping a "shelf" out of a machine onto her hand while at work. He further believed that she was not at maximum medical improvement and required additional treatment; however, he did not anticipate any permanent disability or restrictions. As for temporary restrictions, he said he never took her off work, but her activities are restricted "as tolerated."

3

**Findings of Fact and Conclusions of Law**

The parties stipulated, and the doctors agreed, that Ms. Mosley suffered a work injury to her right hand and wrist while working for HG Staffing. They dispute whether this injury was the source of Ms. Mosley's current symptoms. To resolve this dispute, the Court considers certain legal principles. Specifically, Ms. Mosley must present evidence from which this Court can determine that she is likely to prove at trial that her current right-hand symptoms were primarily caused by her January 2019 work accident, and these symptoms entitle her to additional medical treatment and temporary disability benefits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

In deciding the issue, the Court finds Ms. Mosley to be a candid, credible witness, despite the inconsistency regarding the injury date. The Court believes Ms. Mosley's testimony that she continued to suffer symptoms after her treatment with Dr. Rubright, and that she tried to work through her pain at the nursing home but could not do so.

However, to prove causation, Ms. Mosley's testimony must be supported by medical proof. *See* Tenn. Code Ann. § 50-6-102(14) (2020). She must show to a reasonable degree of medical certainty that her work accident contributed more than fifty percent in causing her current symptoms, considering all causes. Reasonable degree of medical certainty means "it is more likely than not considering all causes, as opposed to speculation or uncertainty." *Id*.

Here, the medical opinions differ as to whether Ms. Mosley's work injury is the source of her current symptoms. When confronted with conflicting expert opinions, the Court has discretion to determine which opinion to accept. *Bass v. The Home Depot U.S.A, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017). The Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Id.*

Applying these considerations, Drs. Rubright, West, and Terry are all orthopedists and qualified to give causation opinions. Both Dr. Rubright and Dr. Terry have seen and treated Ms. Mosley on multiple occasions. Thus, qualifications and the circumstances of the examination offer no real advantage in this case.

However, the law gives Dr. Rubright, as Ms. Mosley's authorized physician, a presumption of correctness as to his causation opinions. *See* Tenn. Code Ann. § 50-6-102(14)(E). Nevertheless, as outlined above, the Court originally found his opinion equivocal and without a positive declaration that Ms. Mosley's current condition was not

4

primarily caused by her work injury. HG Staffing did not offer any additional evidence at the second hearing to correct this deficiency.

As for Dr. West, he stated that he does not believe Ms. Mosley's current symptoms are "directly related" to her original injury, which is more conclusive than Dr. Rubright's opinion. However, both he and Dr. Rubright based their opinions on the premise that Ms. Mosley's symptoms resolved then returned after she attempted to work at the nursing home. This premise is contrary to Ms. Mosley's testimony. Finally, even if the premise were true, neither doctor explained to the Court's satisfaction why it was decisive in determining whether Ms. Mosley's current problems stem from the initial injury.

However, despite the weakness of Drs. Rubright's and West's opinions, it remains Ms. Mosley's burden to prove causation. Therefore, the Court turns to Dr. Terry's opinions to determine if they are sufficient to meet this burden. In addition to his medical records and the "check-the-box" letter, Ms. Mosley also introduced a C-32 medical report. The report uses language that was lacking in his earlier opinions; namely, that he believed to a reasonable degree of medical certainty that Ms. Mosley's injury was primarily caused by her work-related accident in January 2019.

HG Staffing attempted to impeach the report by pointing out that it does not specifically identify Ms. Mosley's employer at the time of the work-related accident, nor does it specifically say that her current symptoms were due to the January 10 injury. However, it identified the injury occurring when Ms. Mosley was employed by HG Staffing being caused by her attempt to catch a machine part. The Court has no difficulty in determining that Dr. Terry was referring to Ms. Mosley's injury while working for HG Staffing. Further, Dr. Terry stated that Ms. Mosley is not at maximum medical improvement from this injury, which leads to the conclusion that she still suffers from symptoms resulting from the January 2019 injury.

Given the findings above, the Court holds that Dr. Terry's causation opinion, along with Ms. Mosley's testimony regarding her accident and continuing problems, is sufficient to prove causation and overcome Drs. Rubright's and West's opinions by a preponderance of the evidence. Thus, Ms. Mosley has shown a likelihood of proving that her current symptoms and need for treatment are primarily related to her January 2019 work injury.

Regarding continued medical care, the Court further finds that HG Staffing denied further treatment with Dr. Rubright. This compelled Ms. Mosley to seek unauthorized treatment with Dr. Terry. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016).

Here, the Court finds the circumstances justified Dr. Terry's unauthorized care. The Appeals Board has stated, "An employer may risk being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A)." *Id.* at *8-9. Given that he has already provided substantial care for Ms. Mosley's complaints, the Court holds that Dr. Terry shall be the authorized doctor for any additional treatment made reasonably necessary by her injury, and HG Staffing shall pay for it.

Finally, the Court considers temporary partial disability benefits. Ms. Mosley must prove: (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *See Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Where the disability is not total, the employee may recover temporary partial disability benefits if the employee is able to resume some gainful employment but has not reached maximum recovery. *Id.*

The Court previously held that Ms. Mosley was not terminated for cause, and HG Staffing did not offer her any employment after her placement at Dana. It further held that HG Staffing owed Ms. Mosley temporary partial disability benefits from April 8 to June 20, 2019, based on Dr. Rubright's restrictions.

The issue now is whether Ms. Mosley presented sufficient evidence to entitle her to additional temporary partial disability benefits. In his C-32, Dr. Terry stated that while he never took Ms. Mosley off work, he felt that her condition required temporary restrictions, and that she should only work "as tolerated." The Court holds that this amorphous phrase, standing alone, is insufficient to justify a finding as to the extent and duration of any temporary partial disability Ms. Mosley might have sustained from her work injury. Thus, she has not established her entitlement to temporary partial disability benefits at this time.

IT IS, THEREFORE, ORDERED THAT:

1. HG Staffing shall authorize Dr. Roy Terry to provide reasonable and necessary medical treatment for Ms. Mosley's work-related injury to her right hand.

2. This case is set for a Scheduling Hearing on **May 18, 2021, at 10:30 a.m. Central Time**. The parties must call 615-253-0010 to participate. Failure to appear might result in a determination of the issues without the party's participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED on April 7, 2021.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. 2nd Request for Expedited Hearing
2. Order Setting Expedited Hearing
3. HG Staffing's Second Expedited Hearing Brief

Exhibits:
1. Collective Exhibits from first Expedited Hearing
2. 1st Expedited Hearing Order
3. Standard Form Medical Report
4. HG Staffing's Submitted Exhibits

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on April 7, 2021.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| **Amanda Mosley** | X | X | 217 Hillcrest Drive Carthage, TN 37030 Ajmosl78@gmail.com |
| **Rosalia Fiorello** | | X | rfiorello@wimberlylawson.com |

7

**PENNY SHRUM,**
**Court Clerk**
WC.CourtClerk@tn.gov

8



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):**_____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*